### HELLER & MERZ CO. v. UNITED STATES.

### ROESSLER & HASSLACHER CHEMICAL CO. v. UNITED STATES.

(Circuit Court, S. D. New York. May 19, 1900.)

Nos. 2,633, 2,635.

1. CUSTOMS DUTIES—CLASSIFICATION—ACIDS—PHTALIC ANHYDRIDE AND TETRACHLORPHTALIC ANHYDRIDE.

Two coal-tar preparations, consisting of phtalic anhydride and tetrachlorphtalic anhydride, which, though not acids chemically, are commercially known as, and perform the functions of, acids, are free of duty under paragraph 473, Free List, § 2, c. 1244, Tariff Act Oct. 1, 1890 (26 Stat. 602), as "acids used for * * * manufacturing purposes," and are not dutiable under paragraph 19, Schedule A, § 1, c. 1244, of said act (26 Stat. 567), as "coal-tar preparations."

Appeals by the importers from decisions of the board of general appraisers affirming the decisions of the collector of customs with regard to certain importations made at the port of New York.

The merchandise covered by these appeals was described in the decisions of the board as consisting of tetrachlorphtalic anhydride and of an article invoiced as phtalic acid. The former was found to be "a chemical compound, a coal-tar preparation not a color or dye, and not an acid." As to the latter

it was observed (G. A. 3952): "The so-called 'phtalic acid, distilled,' is in fact phtalic anhydride, a coal-tar preparation not a color or dye. It is used as one of the materials in the manufacture of certain coal-tar dyes. It is not an acid, but is produced from phtalic acid by distillation. It is known in the arts and in trade and commerce by the name of 'phtalic anhydride,' and sometimes as 'phtalic acid, anhydrous.' It is not known in trade and commerce as an acid, but it is commercially distinguished from phtalic acid, which is known in trade and commerce as an acid."

Albert Comstock, for importers.
Charles D. Baker, Asst. U. S. Atty.

TOWNSEND, District Judge (orally). The merchandise in question is phtalic acid, including a subvariety thereof known as "tetra-chlorphtalic acid," which is in fact a substance prepared from coal tar, and which was assessed for duty at 20 per cent. ad valorem under paragraph 19, Schedule A, § 1, c. 1244, of the act of October 1, 1890 (26 Stat. 567), as a preparation of coal tar not specially provided for, and claimed as free under section 2 of said act, par. 473, Free List, § 2, c. 1244 (26 Stat. 602), as "acids used for * * * manufacturing purposes, not specially provided for." If the article is both an acid and a preparation of coal tar, it is free as an acid. Matheson v. U. S., 18 C. C. A. 143, 71 Fed. 394, 38 U. S. App. 25. If it is commercially and substantially an acid, in that it performs the functions of an acid, then it is free as such, even though it be not technically an acid. Schoellkopf, Hartford & Maclagan v. U. S. (C. C.) 94 Fed. 640; Lutz v. Magone, 153 U. S. 105, 14 Sup. Ct. 777, 38 L. Ed. 651. The evidence introduced before the board of appraisers shows that they were justified in finding that the article was not chemically an acid. The evidence as to commercial designation shows that this article is uniformly and generally known as "phtalic acid." Some of the witnesses say that it is known as "phtalic acid, anhydrous." This word "anhydrous," being merely an adjective designation, does not prevent the substance from coming within the commercial designation of an acid. The great preponderance of trustworthy testimony supports the contention of the importers that it performs the function of, and is commercially known as, an acid.

It appears that, although counsel for the importers seasonably entered his appearance and asked to be advised of all hearings before the board, five witnesses were examined as experts before said board without notice to said counsel in advance, and without his subsequent knowledge at any time prior to the decision by the board. This evidence is deprived of much of the weight to which it might possibly have been entitled, because the witnesses were not cross-examined, and no opportunity was afforded to test their competency or the relevancy of their testimony. In view of the fact that the evidence was introduced upon the question of commercial designation, it was especially necessary that the court should be informed as to the qualifications of said witnesses, in order to determine the weight to be given to their opinions. In the absence of such information, it would be unsafe to hold that commercial designation was proved by mere ex parte statements.

The decision of the board of general appraisers is reversed in both cases.